UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

                                               :

JAMES CAMPBELL and KEVIN RUDOLF,     :

                                             :    Index No. CV 14-0188 (JBW)(RML)

                    Plaintiffs,        :

                                             :

              v.                        :

                                           :

ISHITA GANGULY,                        :

                                           :

                    Defendant.       :

                                           :

-------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STAY THE ACTION PENDING THE OUTCOME OF THE <u>CONCURRENT CRIMINAL CASE</u>

FRANKFURT KURNIT KLEIN & SELZ, P.C.
Brian E. Maas, Esq.
Andrew J. Ungberg, Esq.
488 Madison Avenue
New York, New York 10022
Tel: (212) 980-0120
Fax: (212) 593-9175
bmaas@fkks.com
aungberg@fkks.com
*Attorneys for Plaintiffs James Campbell and Kevin Rudolf*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................................... 1

STATEMENT OF FACTS .................................................................................................................... 2

      Factual History of the Civil Action.................................................................................................. 2

      Relevant Procedural History of the Criminal Action...................................................................... 3

ARGUMENT ......................................................................................................................................... 5

DEFENDANT HAS NOT MET HER BURDEN TO SHOW A STAY OF THE CIVIL
ACTION IS WARRANTED ................................................................................................................. 5

CONCLUSION ..................................................................................................................................... 11

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Gala Enterprises, Inc. v. Hewlett Packard Co.*,
 No. 96 Civ. 4846 (DC), 1996 WL 732636 (S.D.N.Y. Dec. 20, 1996) ....................................10

*Hicks v. City of New York*,
 268 F. Supp. 2d 238 (E.D.N.Y. 2003) ..................................................................................1, 9

*In re Grand Jury Subpoena Issued June 18, 2009*,
 593 F.3d 155 (2d Cir. 2010)........................................................................................................7

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
 676 F.3d 83 (2d Cir. 2012)..............................................................................................1, 5, 9

*Nosik v. Singe*,
 40 F.3d 592 (2d Cir. 1994)..........................................................................................................5

*Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*,
 175 F. Supp. 2d 573 (S.D.N.Y. 2001)...............................................................................6, 8, 9

*Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*,
 886 F. Supp. 1134 (S.D.N.Y. 1995)...........................................................................................6

Plaintiffs James Campbell and Kevin Rudolf (together "Plaintiffs") respectfully submit this Memorandum of Law in Opposition to Defendants' Motion to Stay the Action Pending the Outcome of the Concurrent Criminal Case (the "Motion") brought by Defendant Ishita Ganguly ("Defendant" or "Ganguly").

## PRELIMINARY STATEMENT

Defendant Ganguly's stay motion seeks to stop all activity in this civil case until there is a final resolution of a criminal case that has been brought against her. However, she fails to tell this Court that the criminal case against her has been on hold since the indictment was filed in February 2014 and that the next court appearance is not scheduled until July 7, 2014. Moreover, all of the delay to date has been excluded under the Speedy Trial Act in the interests of justice and there is no reason to believe that the criminal case will move forward to a resolution at any time in the foreseeable future. Thus, were this Court to grant the requested stay, so that even the commencement of discovery in this civil case would be postponed until a final resolution of the criminal case, Plaintiffs could be delayed in their pursuit of the recovery of the $2 million that was stolen from them for a year or more. Given the risks that assets will be dissipated and that memories will fade, the prejudice to Plaintiffs from this delay outweighs any burden created by the possibility of having to testify in the civil case puts on Ganguly's constitutional rights. *See Hicks v. City of New York*, 268 F. Supp. 2d 238 (E.D.N.Y. 2003)( noting that a complete stay of a civil action is an "extraordinary remedy"); *see also Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97 (2d Cir. 2012)(in deciding whether to grant such a stay, courts must balance the strong interests of a civil plaintiff in vigorously pursuing a resolution of their claims against the possibility of "undue burden" to the defendant's constitutional rights.).

Here, Defendant Ganguly has failed to meet her burden to show undue prejudice that would justify staying this action pending the outcome of the related criminal case. While she

may at some point be faced with the decision of whether to testify in the civil case or assert her right against self-incrimination, that decision is not imminent and there is a great deal of discovery that can — and should — be done before that issue may arise.  At that point, this Court will have a better understanding of the schedule for the criminal case and whether the plea negotiations that are alluded to on the criminal docket have been successful, or whether the criminal case will go to trial.  However, given the current posture of the criminal and the civil case, the potential prejudice to Plaintiffs that would be caused by delaying their ability to obtain evidence from third parties and non-privileged evidence from Ganguly far outweighs Ganguly's concerns over a theoretical burden on her constitutional rights.

Accordingly, Ganguly's arguments supporting her request for a stay of this action are unavailing and this Court should deny the Motion in its entirety.

## STATEMENT OF FACTS

**Factual History of the Civil Action**

By this action, filed on January 10, 2014, Plaintiffs each seek to recover $1 million that Defendant Ganguly induced them to separately transfer into her control, purportedly to be invested as part of an investment scheme based on the representation that the Plaintiffs' funds would be securely held.(the "Civil Action")  As alleged in the complaint, the investment scheme was a scam; Ganguly promptly withdrew the funds from the supposedly secure account and used Plaintiffs' money for her own personal benefit. *See generally*, Plaintiffs Complaint and Jury Demand dated January 9, 2014 [ECF No. 1] ("Complaint").

Specifically, during April and May 2012, Defendant Ganguly represented herself as a Managing Director at Astute Partners (BVI) LTD ("Astute"), a purportedly legitimate organization, looking for investors for an exclusive private investment program that would generate significant short-term returns to qualified participants.  Complaint ¶¶ 8–25.  Under this

2

guise, Ganguly approached each of the Plaintiffs and made representations in order to induce them to deposit funds into a bank account that she controlled. *Id.* Ganguly's representations included that the Plaintiffs' money would at all times be maintained in a secure escrow account, and that they each would be able to recover their principal investment. *Id.* On this basis, the Plaintiffs each transferred $1 million into Ganguly's account purportedly to be invested in the Astute program. *Id.*

In truth, Ganguly's investment proposition was a fraud. Once the Plaintiffs transferred their funds into the allegedly secure account, Ganguly withdrew the funds and used them for her own benefit, including to purchase her current residence on Staten Island and/or to purchase expensive jewelry for herself. *Id.* at ¶36. After converting their funds, Ganguly ceased communicating with them despite Plaintiffs' repeated demands over several months that their money be returned. *Id.* ¶¶ 28–35. The only responses came from Ganguly's associate at Astute, Paul Phillips, who serially made excuses intended to justify the increasing delay in returning Plaintiffs' investment. *Id.* Ultimately, after months of dealing with Ganguly's failure to respond to them and Phillips's obfuscation, Plaintiffs initiated the Civil Action.

**Relevant Procedural History of the Criminal Action**

At some point after inducing Plaintiffs to transfer their funds into her control, Ganguly's activities attracted the attention of law enforcement, including the United States Attorney's Office for the Southern District of New York (the "USAO").[1] On or about December 17, 2013, the USAO filed a sealed criminal complaint against Ganguly in the Southern District of New

---

[1] Contrary to Ganguly's implication, Plaintiffs do not have any special access to or knowledge of the USAO's investigation or the criminal case currently pending against her in this district. The procedural history of Ganguly's interaction with the USAO provided here is based entirely on information taken from the publicly available docket and documents filed in the action that are available on PACER.

3

York captioned *United States of America v. Ishita Ganguly*, No. 14 CR 0123 (the "Criminal Action"). *See* Declaration of Brian E. Maas dated May 6, 2014 (the "Maas Decl.") Ex. A at 6. Shortly thereafter, on or around December 21, 2013, Ganguly was arrested based on the criminal complaint and later released on bond. *See* Maas Decl. Ex. B at 1.[2]

After Ganguly's initial arrest, the court issued an order dated January 21, 2014 continuing the Criminal Action until February 20, 2014, in part because Ganguly and the USAO were "engaged in, and are continuing, discussions concerning a possible disposition of this case." *See Id.* at 1–2.

An indictment charging Ganguly with Securities Fraud, Wire Fraud and Money Laundering was filed on February 21, 2014. *See generally* Maas Decl. Ex. C. Then, by order entered on February 24, 2014, the court deferred a pretrial conference on the joint request of the USAO and Ganguly to permit the parties to engage in "discussions about a possible disposition of this matter." Maas Decl. Ex. D. At the eventual pretrial conference on March 4, 2014, the court again extended the time for Ganguly to move in response to the criminal complaint until May 6, 2014. *See* Maas Decl. Ex. A at 3.

Most recently, on May 2, 2014 the court granted Ganguly's request to further extend the time for her to respond to the criminal complaint until May 30, 2014, and to adjourn the pretrial conference until July 7, 2014. Maas Decl. Ex. E at 2.

---

[2] That the criminal complaint includes allegations based on Defendant's misappropriation of Plaintiffs' funds does not indicate anything more than Plaintiffs status as witnesses in the criminal case. As this Court well knows, decisions as to whether to prosecute and on what charges lie solely with the United States Attorney's Office.

4

## ARGUMENT

### DEFENDANT HAS NOT MET HER BURDEN TO SHOW<br>A STAY OF THE CIVIL ACTION IS WARRANTED

Defendant's Motion is based on a fundamental misunderstanding of the differences between a criminal prosecution, whereby the government seeks to impose certain penalties on a defendant, and a civil lawsuit such as this where defrauded investors, such as Plaintiffs, seek a judgment in order to recover their misappropriated funds. While Plaintiffs here are witnesses in the criminal case, the two cases are not a "total overlap of one another" and the prejudice that Plaintiffs will suffer should the civil case be stayed outweighs the potential prejudice to Ganguly from having to decide at some point during civil discovery whether or not to exercise her right against self-incrimination. It has been almost two years since Ganguly induced Mr. Campbell and Mr. Rudolf to each transfer $1,000,000 into her control based on her false promises that the funds would be kept secure. Plaintiffs should be allowed to move forward with their civil claims in order to recover those funds.

"[T]he party seeking a stay bears the burden of establishing need." *Louis Vuitton Malletier S.A. v. LY USA, Inc.,* 676 F.3d 83, 97 (2d Cir. 2012). However, the mere existence of a parallel criminal action does not provide sufficient justification to stay a civil lawsuit; the moving party must make some showing that the civil lawsuit will give rise to "undue prejudice." *Id.* at 97 ("[A]bsent a showing of undue prejudice upon defendant or interference with his constitutional rights, *there is no reason why plaintiff should be delayed in its efforts to proceed to sustain its claim.*") (emphasis added). "Nothing in the Constitution forbids contemporaneous civil and criminal proceedings concerning the same subject matter." *Nosik v. Singe*, 40 F.3d 592, 596 (2d Cir. 1994).

There is no dispute that a parallel criminal matter, once post-indictment, does present risks to a defendant's constitutional rights. *See, e.g. Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*,

175 F. Supp. 2d 573, 577 (S.D.N.Y. 2001). However, a stay in such circumstances is far from automatic as courts are still required to balance the interest of the civil plaintiff in an expeditious resolution of the damage claim against the burden placed on the defendant's exercise of her constitutional rights. Given the delay that has taken place in the Criminal Action already, and the several exclusions of time under the Speedy Trial Act in the interests of justice, there is no assurance that the Criminal Action will be finally resolved, either by a plea or a trial, in a time frame that would be fair to Plaintiffs' interest in obtaining recovery of their misappropriated funds. *Cf. Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)(stay may be warranted post indictment because "the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be resolved quickly due to Speedy Trial Act considerations).

Here, the Speedy Trial Act may well not provide any real protection to Plaintiffs' interest and a stay could delay for an indefinite period even the beginning of discovery in this case, let alone obtaining and collecting on a judgment. While Ganguly is correct that the government has obtained an order freezing certain of her assets, there is no guarantee that those funds are of sufficient value to make Plaintiffs whole or that other victims will not come forward to make competing claims to the restrained funds. Thus, should this Court stay all discovery at this point, Plaintiffs could well find themselves at some point in the unpredictable future in a position where their ability to recover their funds is restricted to being two of several claimants to a limited victim compensation fund while Ganguly's other assets have been dissipated. Such a result is precisely the sort of prejudice arising from a delay that courts recognize must be considered in the balancing of interests. *C.f. Sterling Nat'l Bank v. A-1 Hotels Intern., Inc.*, 175 F. Supp. 2d 573, 579 (S.D.N.Y. 2011) ("It is unclear whether defendants have sufficient assets to permit any meaningful recovery, and permitting a further delay during which assets can be

dispersed or hidden . . . will increase the risks that the plaintiff could succeed in the litigation, without being able to collect on any judgment.").

Ganguly's Motion assumes that allowing discovery in this case to go forward will immediately force her to choose between asserting her privilege against self-incrimination here, with its corresponding adverse inference, or testifying here and potentially waiving her right against self incrimination in the Criminal Action. However, Plaintiffs intend to seek discovery from third parties who were either involved in the scheme that victimized Plaintiffs or had direct interaction with Ganguly, as well as from the bank into which Plaintiffs deposited their funds at Ganguly's direction and from which she is alleged to have withdrawn the Plaintiffs' funds.[3] In addition, Ganguly is likely to be in possession of business documents relating to the investment scheme, including communications with third parties, as well as banking and other financial documents that are not subject to the Fifth Amendment privilege. *See In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d 155, 157–59 (2d Cir. 2010) (noting that because corporations do not possess a Fifth Amendment privilege, custodians of corporate documents cannot object to the production of documents on Fifth Amendment grounds "regardless of how small the corporation may be").[4] Thus, there is a great deal of discovery that can take place over the next few months that will move the case closer to trial without implicating Ganguly's Fifth Amendment privilege. Allowing this discovery to go forward will protect Plaintiffs from the

---

[3] A subpoena has already been served on Citibank for bank records for the account that Ganguly used as part of her scheme. At this point, Plaintiffs do not know if Ganguly transferred their funds to other financial institutions or to third parties from whom further discovery will be needed.

[4] Defendant held herself out as a representative of Astute, and is therefore a custodian of Astute's records.

potential prejudice that they would suffer should documents be lost or destroyed, or third-party witnesses become unavailable or their memories of conversations fade over time.

As noted above, Ganguly was first arrested on a criminal complaint on December 23, 2013. Maas Decl. Ex. B at 1. After one thirty-day extension, an indictment charging defendant with Securities Fraud, Wire Fraud and Money Laundering and seeking forfeiture was filed on February 20, 2014. *See generally* Maas Decl. Ex. C. Since then, the deadline for filing motions has been extended twice with the time being excluded under the Speedy Trial Act. Under the most recent order, dated May 2, 2014, the next court appearance is July 7, 2014 and it is far from clear what will happen on that date. *See* Maas Decl. Ex. E. Regardless, there is no guarantee that a trial or a disposition by plea of the criminal case is likely in the foreseeable future and the Speedy Trial Act is unlikely to provide Plaintiffs with any assurance of a speedy disposition of the criminal case.

Thus, there is no basis for the suggestion in the Motion that the pendency of the Criminal Action protects Plaintiffs in their efforts to recover their money from Ganguly. First, there is no guarantee that Ganguly will either plead guilty or be convicted of a charge that will have estoppel effect in this case. Regardless, Plaintiffs will still have their right to seek recovery of the funds that Ganguly converted to her own use. Moreover, while the government may after conviction, obtain forfeiture of the already restrained assets, Plaintiffs have no guarantee that criminal forfeiture will provide them with sufficient recovery.[5] *C.f. Sterling Nat'l Bank v. A-1*

---

[5] The Motion does correctly note that Ganguly's home and certain jewelry are subject to a post indictment restraining order. Motion at 5. The Motion ignores, however, that Plaintiffs may not be the only victims of Ganguly's fraudulent schemes, and the real possibility that a forfeiture sale of Ganguly's property will fail to generate sufficient assets to satisfy the claims of all of her potential victims. Plaintiffs are entitled to pursue and secure a civil judgment in the full amount of Ganguly's liability without regard to whether they may also be able to obtain partial relief through to the Criminal Action.

8

*Hotels Intern., Inc.*, 175 F. Supp. 2d 573, 579 (S.D.N.Y. 2011) ("It is unclear whether defendants have sufficient assets to permit any meaningful recovery, and permitting a further delay during which assets can be dispersed or hidden . . . will increase the risks that the plaintiff could succeed in the litigation, without being able to collect on any judgment."). Staying the Civil Action would therefore delay Plaintiffs from pursuing their claims against Ganguly without an adequate substitute, which would prejudice Plaintiffs.

Ganguly asserts without support that Plaintiffs would suffer "no harm" if the Civil Action were to be stayed because "Plaintiffs are ostensibly cooperating in the criminal case" and would therefore benefit from discovery in the Criminal Action. *See* Motion at 6–7. However, Courts have rejected the argument that a victim-plaintiff should be considered equivalent to government law enforcement in determining whether to grant a stay. *See Sterling Nat.*, 175 F. Supp.2d at 579 ("Plaintiff is a private entity, with interests distinct from those of the government. There is no reason to assume that its civil case is simply a stalking horse for the government's criminal inquiry, rather than a good faith effort to obtain compensation for its own private injuries."). Here, Plaintiffs are merely witnesses in the Criminal Action and do not have any special access to, or knowledge of, the status of the Criminal Action beyond whatever documents have been made publically available through the court's docket. Further, there is nothing to suggest that the government will share with Plaintiffs the evidence that it has developed against Ganguly.

Defendant's motion assumes that a stay of discovery is a routine post-indictment remedy. In fact, "[a] stay of a civil case is an extraordinary remedy." *Hicks v. City of New York*, 268 F. Supp. 2d 238 (E.D.N.Y. 2003). District courts have broad discretion to fashion other remedies, including an appropriate protective order to restrict discovery. *See id.*; *see also Louis Vuitton*, 676 F.3d at 96. ("A district court's decisions regarding the timetable for trial will not be reversed absent an abuse of discretion.") Thus, this Court has the discretion to fashion an order

9

that would only limit discovery to the extent such discovery might impinge upon Ganguly's right against self-incrimination.  *See Gala Enterprises, Inc. v. Hewlett Packard Co.*, No. 96 Civ. 4846 (DC), 1996 WL 732636, at \*3 (S.D.N.Y. Dec. 20, 1996) ("A general stay of all civil discovery is not by any means the best option available to the court or the litigants. *Stays can and should be tailored to avoid undue prejudice.*") (emphasis added).  Here, a limited protective order would adequately safeguard Ganguly while at the same time avoiding significant prejudice to the Plaintiffs' ability to vigorously pursue document discovery and to subpoena third-parties for documents and testimony.[6]

If this Court determines that a stay of the Civil Action is appropriate, it should narrowly tailor the stay to permit Plaintiffs to pursue these sources of discoverable information.  Plaintiffs' efforts to pursue such discovery from witnesses and financial institutions will not present any risk of prejudice to Ganguly's constitutional rights and, therefore, discovery should be permitted to move forward despite the pendency of the Criminal Action.  *See Gala Enterprises, Inc.*, 1996 WL at \*3.  Conversely, barring Plaintiffs from conducting third party discovery would not

---

[6] A significant amount of the evidence in this action resides in the hands of third parties, and the pursuit of this information will not impact Ganguly's constitutional rights in any way.  For example, Plaintiffs have alleged that part of Ganguly's fraudulent scheme involved soliciting potential investors in the purported Astute investment program.  *See* Complaint at ¶¶ 8,20. Plaintiffs have a good faith basis to believe that Ganguly approached other individuals, and that these individuals therefore have information and documents pertaining to Ganguly's representations about her scheme.  *See* Maas Decl. Ex. F at 3.  Additionally, Plaintiffs believe that Ganguly's associate, Paul Phillips, likely possesses evidence relating to the true nature of Astute as a sham business operated as cover for Ganguly's fraud.[6]  Finally, Ganguly operated her fraudulent scheme in part by using at least one bank account at Citibank, *see* Complaint ¶¶ 16, 24, where Ganguly instructed Plaintiffs to deposit their funds supposedly for use in conjunction with the purported investment.  Plaintiffs' have subpoenaed documents from Citibank in order to trace their funds from Ganguly's bank account; the process of tracing money to its current location may very well require Plaintiffs to subpoena additional financial institutions.

provide any meaningful protection to Ganguly's constitutional rights, but would only prejudice the Plaintiffs by unnecessarily delaying this case.

**CONCLUSION**

For the foregoing reasons, this Court should deny Defendants' Motion in its entirety. In the alternative, if this Court grants a stay of the Civil Action, Plaintiffs respectfully request that it be narrowly tailored to permit the Plaintiffs to continue to pursue document and third-party discovery that does not impinge upon Defendant's constitutional rights.

Dated: New York, New York
May 6, 2014

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By: /s/ *Brian E. Maas*
Brian E. Maas
Andrew J. Ungberg

488 Madison Avenue, 10th Fl.
New York, New York 10022
Tel: (212) 908-0120
Fax: (212) 593-9175
bmaas@fkks.com
aungberg@fkks.com

*Attorneys for Plaintiffs James Campbell
and Kevin Rudolf*